```
                 UNITED STATES DISTRICT COURT
                           FOR THE
                     DISTRICT OF VERMONT

Paul Bourn,                       :
        Plaintiff,                :
                                  :
    v.                            :   File No. 1:09-cv-00212-jgm
                                  :
Richard Gauthier,                 :
Officer Dean, Officer Stemp,      :
and Officer Fadden,               :
        Defendants.               :
```

OPINION AND ORDER
(Doc. 32)

*Pro se* plaintiff Paul Bourn brings this action claiming he suffered serious injuries when he crashed his motorcycle into a police roadblock at a speed of approximately 100 miles per hour. Pending is the Defendants' motion for summary judgment. The motion is unopposed. For the reasons set forth below, the motion for summary judgment is GRANTED. Bourn may file an Amended Complaint within 30 days. Failure to file a timely Amended Complaint will result in dismissal of all claims with prejudice.

Background

On the night of September 17, 2007, Bourn rode his motorcycle to a gas station in Bennington, Vermont. After putting gas in the motorcycle, he allegedly discovered he was not carrying any money and drove away without paying. Bennington Police Officer David Faden received a report of the incident, saw Bourn, and stopped his police cruiser to speak with him. Bourn testified in his deposition that when he saw Officer Faden, he "panicked" and drove off toward his home. (Doc. 32-3 at 18-19.)

Officer Faden followed, but did not immediately activate his blue lights.

When Bourn arrived home, he parked his motorcycle behind the building. He then walked toward the front, ostensibly to retrieve his wallet, whereupon Officer Faden pointed a spotlight at him. Bourn again fled, returning to his motorcycle and driving away at a speed that approached 100 miles per hour. Officer Faden pursued with his blue lights and siren on.

As he was fleeing Officer Faden in a northbound direction, Bourn noted two southbound police cruisers coming toward him. He testified at his deposition that "[t]hey were both coming at me in both lanes . . . . I had no way to go . . . . I had no choice but to stop. They would have killed me." (Id. at 31.) Bourn applied his brakes, the brakes locked, and the motorcycle began to skid on its side. Bourn became separated from the motorcycle, and he hit his head on what he believes to have been the bumper of one of the southbound cruisers.

Bourn suffered a concussion and abrasions as a result of the crash. In his Complaint (Doc. 4), he also claims to be suffering from recurring headaches, nightmares and blackouts, and speculates he may have a "severe traumatic brain injury as well as post traumatic stress disorder."

The crash was investigated by Trooper Todd Wilkins of the Vermont State Police. Trooper Wilkins concluded there was enough

space for Bourn to have driven around the southbound cruisers, and that the cause of the crash was Bourn's high rate of speed and negligent operation of the motorcycle.  Trooper Wilkins also concluded that had Bourn been traveling at the posted speed limit, he would have been able to stop the motorcycle prior to reaching the police cruisers.

Bourn subsequently pled guilty to petit larceny for stealing the gasoline, attempting to elude a police officer, and negligent operation of a motor vehicle.  He is seeking over $100 million in damages from the various Defendants.  The Bennington Police Department was dismissed from the case in a prior Order of the Court.  (Doc. 29.)

## Discussion

### I. Summary Judgment Standard

The Defendants now move for summary judgment.  Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); see El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); El

Sayed, 627 F.3d at 933.  Only disputes over material facts - facts that might affect the outcome of the suit under the governing law - will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).

Bourn's failure to oppose or respond to the summary judgment motion, standing alone, does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Indeed, if the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."  Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).

Furthermore, it is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims.  See Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 146 (2d Cir. 2002).

II.  Constitutional Violation

The Defendants properly note that Bourn's Complaint does not assert a federal cause of action.  Nonetheless, construing Bourn's *pro se* submissions to raise the strongest arguments that they suggest, Chavis, 618 F.3d at 170, his claims may be construed as alleging excessive force in violation of his constitutional rights.

Assuming a constitutional claim, the Court must first determine which provision of the Constitution applies.  The Defendants argue the case should be analyzed under a substantive due process standard, citing County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998).  In Lewis, police officers undertook a high speed chase of a motorcycle that resulted in the death of the motorcycle passenger.  Id. at 837.  The Supreme Court considered whether the conduct of the police was governed by the Fourth Amendment.  Finding that it was not, the Court explained that a police pursuit does not amount to a Fourth Amendment seizure unless the pursuit is terminated "through means intentionally applied."  Id. at 843-44 (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989)).  The Court therefore turned to the Fourteenth Amendment's guarantee of substantive due process, and sought to determine whether the police had engaged in "arbitrary conduct shocking the conscience."  Id. at 836.

The substantive due process standard set forth in <u>Lewis</u> applies to the conduct of Officer Faden.  Officer Faden pursued Bourn until Bourn sped away, and did not engage in any "intentional" act to terminate the chase.  As the Supreme Court made clear in <u>Lewis</u>, "no Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit . . . .'"  <u>Id.</u> at 844 (quoting <u>Brower</u>, 489 U.S. 593, 596-97 (1989).  This is precisely what Officer Faden did, pursuing Bourn with his blue lights and siren on, but reportedly playing no role in the roadblock that resulted in Bourn's crash.

Based upon the undisputed facts set forth at summary judgment, the Court further finds that Officer Faden's conduct did not amount to "arbitrary conduct shocking the conscience." <u>Lewis</u>, 523 U.S. at 836.  When Bourn drove off at a high speed, Officer Faden "accelerated quickly" and followed him through an intersection.  (Doc. 32-4 at 3.)  Officer Faden states in his affidavit that he never got close enough to the motorcycle to read the plate number, and that Bourn was pulling away at the time of the crash.  (<u>Id.</u>)  Moreover, according to Bourn's Complaint, Officer Faden "responsibly and dutifully called off the pursuit" prior to the crash "as to not endanger the lives of plaintiff or others."  (Doc. 4 at 2); (Doc. 32-3 at 36.)

6

The constitutionality of Officer Faden's conduct is particularly clear when compared to the facts in Lewis. There, the Supreme Court found no constitutional violation where the officers maintained their pursuit of the motorcycle for over a minute in a residential neighborhood, at speeds of up to 100 miles per hour, and at times trailing the motorcycle at a distance of as close as 100 feet.  523 U.S. at 837. "[A]t that speed, [the officer's patrol] car would have required 650 feet to stop."  Id.  When the motorcycle went down while taking a left turn, one of the chasing patrol cars ran over and killed the motorcycle passenger.

The Lewis Court found that although "prudence" might have called for less risky behavior by law enforcement, the officer in question

> was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes.  [The driver's] outrageous behavior was practically instantaneous, and so was [the officer's] instinctive response.
>
> . . .
>
> Regardless whether [the officer's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983.

Id. at 855.

Here, Officer Faden allegedly *did* call off the pursuit. Moreover, there is no indication his speed approached that of the officers in Lewis, or that he was dangerously close to Bourn's vehicle. Consequently, applying a substantive due process analysis, Officer Faden's pursuit did not violate the Constitution, and he is entitled to summary judgment.

The summary judgment motion argues, under a "shocks the conscience" standard, that the facts do not support a constitutional claim against "any of the Defendants." (Doc. 32-1 at 5.) It is not clear from the current record, however, that a substantive due process analysis would apply to all of the officers involved. Specifically, the conduct of the officers who formed the alleged blockade may require a Fourth Amendment objective reasonableness analysis. See, e.g., Scott v. Harris, 550 U.S. 372 (2007).

As discussed above, if an officer takes action with the intent to terminate the chase, he may have conducted a seizure under the Fourth Amendment. Here, Bourn claims two police cars drove toward him, occupying both lanes of the road and, according to his deposition testimony, leaving him nowhere to go. Based upon these allegations, it is conceivable that one or both of those officers intended to form a blockade and to end the

pursuit.  If that is the case, a Fourth Amendment analysis arguably applies.  Id.[1]

The Defendants' summary judgment motion offers no argument under the Fourth Amendment.  This is perhaps because, as discussed below, and aside from Officer Faden, Bourn has named the wrong police officers.  As a consequence, the drivers of the patrol cars that allegedly put an end to the chase are not currently parties to the case.  That is an error the Court will grant Bourn leave to rectify.  Based on the present state of the pleadings, the Court cannot render a decision as to the constitutionality of those remaining officers' conduct.  The Court will address that question only if Bourn properly amends his Complaint to add those officers as parties.

III. Supervisor Liability

The Defendants next contend Officer Faden and Police Chief Richard Gauthier are entitled to summary judgment to the extent

---

[1] In Scott, police chased the suspect at high speeds for more than six minutes, and ultimately engaged in a maneuver known as a "Precision Intervention Technique," applying the police car's "push bumper to the rear of [the suspect's] vehicle." Id. at 375.  The suspect crashed as a result. Id.  The Supreme Court first found that given the officer's decision to terminate the chase, the suspect had been subjected to a "seizure" under the Fourth Amendment. Id. at 381 (citing Brower, 489 U.S. at 596-97).  The Court then concluded, and the parties conceded, that the excessive force claim should be analyzed under the Fourth Amendment's objective reasonableness standard. Id. (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).

the Complaint is raising claims of supervisor liability.  The allegation against Chief Gauthier is that he failed to properly hire, train and supervise the officers who pursued Bourn. Officer Faden is alleged to have been the patrol supervisor and radioed that he was in pursuit.  Bourn further alleges, however, that Officer Faden called off the pursuit.

Supervisor liability under § 1983 is limited, as it is well established that there is no *respondeat superior* liability under § 1983.  Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Indeed, personal involvement of a defendant is an essential element of a § 1983 claim.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  Consequently, in order to hold a supervisor liable under § 1983, one or more of the following must be established: (1) direct participation in the constitutional deprivation; (2) failure to remedy a wrong after learning about it through a report or appeal; (3) creation of a policy that sanctioned the violative conduct or allowed such conduct to continue; (4) grossly negligent supervision of personnel who committed the violation; or (5) failure to act after receiving information indicating that constitutional violations were occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

With respect to Chief Gauthier, there is no allegation he was directly involved in the events of September 17, 2007. The primary claims against him are that he failed to properly hire, train and supervise. These claims arguably fall under the third and fourth Colon factors.

A failure to supervise claim, most commonly brought against municipalities rather than individuals, see Sanville v. McCaughtry, 266 F.3d 724, 739 (7th Cir. 2001), "can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." Hall v. Marshall, 479 F.Supp.2d 304, 315-16 (E.D.N.Y. 2007) (citations omitted). The Second Circuit has ruled that "[t]he operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 128 (2d Cir. 2004). To support such a claim, a plaintiff must also prove causation; "that is, that the [defendant's] 'inadequate supervision actually caused or was the moving force behind the alleged violations.'" Stevens v. City of Bridgeport, 607 F. Supp. 2d 342, 356 (D. Conn. 2009) (quoting Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007)).

As to inadequate training, "[i]n City of Canton, Ohio v. Harris, [489 U.S. 378 (1989)] the Supreme Court established a municipality can be liable for failing to train its employees

where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." Amnesty Am., 361 F.3d at 129 (citing City of Canton, 489 U.S. at 387-90). This "requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference," but that they also "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Id. (quoting City of Canton, 489 U.S. at 391).

    Here, the Defendants have submitted an affidavit from Chief Gauthier in which he attests to the Bennington Police Department's hiring and training practices. These reportedly include criminal background checks, a certification process, and a requirement officers successfully complete a probationary period. Chief Gauthier also attests his officers are required to attend in-service trainings, these trainings exceed state requirements, and all of his officers have been specifically trained on how to conduct pursuits of motor vehicles. (Doc. 32-8.)

    Bourn has not set forth any evidence the supervision or training practices of the Bennington Police Department were

lacking with regard to high-speed pursuits.  As to supervision specifically, there is no support in the record for a finding Chief Gauthier was deliberately indifferent to the rights of suspects in this regard.  There is no evidence Chief Gauthier knew of a pattern of high speed pursuits within his Department that might raise constitutional questions, or that a "conscious choice" by the Chief was "the moving force" behind the actions resulting in Bourn's crash.

Similarly, there is no evidence in the record of a failure to train.  In fact, the record indicates Bennington officers did indeed receive training on how to pursue motor vehicles.  Bourn has not identified any specific flaw in that training, or any argument as to how either improper or inadequate training resulted in his injuries.  Consequently, the Court finds no genuine issue of material fact in the allegations brought against Chief Gauthier.  His motion for summary judgment is therefore GRANTED.

With respect to Officer Faden, the allegation he called off the pursuit forecloses any claim of inadequate supervision on the night of the crash.  To the extent Officer Faden was involved in police training or other more general supervision, the record offers no evidence of shortcomings or decision-making that would amount to deliberate indifference.  Officer Faden's motion for summary judgment is therefore GRANTED.

IV.  Defendants Dean and Stemp

The Complaint names Officers Dean and Stemp as the drivers of patrol cars that formed the alleged blockade.  Bourn conceded at his deposition, however, that neither officer was on duty that night, and agreed with Defendants' counsel these officers should be dismissed from the case.  (Doc. 32-3 at 35-36.)  The motion for summary judgment on behalf of Officers Dean and Stemp is therefore GRANTED.

V.  Qualified Immunity

The Defendants have also moved for summary judgment on the basis of qualified immunity.  To the extent they are seeking to apply this defense to Officer Faden, the Court concluded that Officer Faden's pursuit did not violate the Constitution.  All other named Defendants have also been granted summary judgment.  Thus, there is no need for a qualified immunity analysis at this time.

The Defendants do not offer a qualified immunity argument with respect to the officers who drove the two oncoming police cars.  Until those officers become parties to the case, the Court need not address the question of whether qualified immunity protects them from liability.

VI.  Leave To Amend

Bourn moved previously to add Officers Thomas Bull and Robert Zink to the case, alleging these were the officers who

formed the alleged blockade. The Court denied his motion because it did not comply with Local Rules. (Docs. 22, 26, 29.) In denying the motions to amend, the Court explained that Bourn needed to attach a proposed Amended Complaint, the Amended Complaint must include "sufficient supporting factual allegations," and if leave is granted, the new parties would be served "in accordance with the Court's prior ruling on Bourn's motion to proceed *in forma pauperis*." (Doc. 29 at 7-8.) Despite the Court's instructions, Bourn has not asked for further leave to amend.

Given the alleged roles of Officers Bull and Zink, the Court finds justice requires granting Bourn one more opportunity to amend his Complaint. See Fed. R. Civ. P. 15 ("The court should freely give leave [to amend] when justice so requires). The Amended Complaint should exclude Officers Faden, Stemp and Dean, Chief Gauthier, and the Bennington Police Department, as those Defendants have each been dismissed. The Amended Complaint shall be filed within 30 days of the date of this Opinion and Order. Failure to meet this deadline will result in the dismissal of all claims with prejudice.

## Conclusion

For the reasons set forth above, the Defendants' motion for summary judgment is GRANTED. Bourn may file an Amended Complaint on or before April 28, 2011. Failure to file a timely

Amended Complaint will result in the dismissal of all claims with prejudice.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of March, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge