```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT
```

Paul Bourn,                       :
                                  :
        Plaintiff,                :
                                  :
   v.                             :   File No. 1:09-cv-212-jgm
                                  :
Officer Bull and Trooper Zink,    :
                                  :
        Defendants.               :

## OPINION AND ORDER
(Doc. 60)

*Pro se* plaintiff Paul Bourn brings this action claiming he suffered serious injuries when he crashed his motorcycle into a police roadblock at a speed of approximately 100 miles per hour. Pending before the Court is Defendants' motion for summary judgment. The motion is unopposed. For the reasons set forth below, the motion for summary judgment is GRANTED and this case is DISMISSED.

### Factual Background

The following facts are undisputed. On the night of September 17, 2007, Bourn rode his motorcycle to a gas station in Bennington, Vermont. After putting gas in the motorcycle, he drove away without paying. Bourn then stopped to speak with a friend. Bennington Police Officer Faden, having heard about the theft of gas, spotted Bourn and stopped to speak with him. Bourn testified in his deposition that when he saw Officer Faden, he "panicked" and drove off toward his home. (Doc. 32-3 at 18-19.)

Officer Faden followed, and made a radio transmission at 21:18:16 advising that Bourn had driven off.

When Bourn arrived at his home, he parked his motorcycle behind the building. At approximately 21:19:09, Officer Faden made a second radio transmission advising he had lost sight of the motorcycle. Bennington Police Officers Bull and Zink, on patrol in separate cruisers, heard Officer Faden's transmissions.

As Bourn walked toward his building, ostensibly to retrieve his wallet, Officer Faden pointed a spotlight at him. Bourn again fled, returning to his motorcycle and proceeded north on Park Street at a speed that approached 100 miles per hour. Officer Faden pursued with his blue lights and siren on.

Officers Bull and Zink had begun driving south on Park Street to help Officer Faden locate the motorcycle. Officer Zink was in the lead cruiser, and Officer Bull followed immediately behind. Initially, neither officer activated his lights or siren.

At 21:19:54, Officer Faden made a third radio transmission alerting Officers Bull and Zink that Bourn was "right in front of you." (Doc. 60-4 at 3.) At that time, Officers Bull and Zink observed a set of blue lights traveling north on Park Street in the vicinity of the County Street intersection, and the single headlight of a motorcycle also traveling north on Park Street. Both southbound officers activated the blue lights on their

2

cruisers. The area between the County Street intersection and the southbound officers was a flat, level roadway with no visual obstruction. The area was lit with streetlights. The speed limit on Park Street was thirty miles per hour.

After activating his blue lights, Officer Zink decided to turn left across the center lane in order to pull into what he describes in his affidavit as a "dirt pull-off/parking area on the north bound side of Park Street . . . in order to turn around so that I could follow Officer Faden as he pursued the motorcycle." (Doc. 60-6 at 3.) As Officer Zink began to turn he "observed that, unbeknownst to me, the area had been recently renovated and a curb had been erected preventing access to what had been the parking area." Id. Officer Bull was also unaware at the time that a curb had been erected. Officer Zink further observed that Bourn's motorcycle had accelerated, and was traveling much faster than he had originally estimated.

Before Officer Zink could move his cruiser any further, Bourn applied his brakes and the motorcycle went into a skid. Bourn testified at his deposition that as he was fleeing from Officer Faden, he noted two southbound police cruisers coming toward him. "They were both coming at me in both lanes . . . . I had no way to go . . . . I had no choice but to stop. They would have killed me." (Doc. 32-3 at 31.) Officer Faden attests that, from his "vantage point, there was room for [Bourn] to have

avoided both Officer Zink and Officer Bull's cruisers if he had chosen to do so." (Doc. 60-4 at 4.) Officers Bull and Zink concur that "there was room for [Bourn] to have driven his motorcycle around [their] cruiser[s] if he had chosen to do so." (Doc. 60-5 at 3); (Doc. 60-6 at 3.)

Bourn became separated from the motorcycle, and hit his head on what he believes to have been one of the officers' cruisers. Officer Zink contends that although Bourn's motorcycle "grazed the corner of my front bumper and continued sliding along the roadway," Bourn himself did not come into contact with his cruiser. (Doc. 60-6 at 3.) Officer Zink also attests that Bourn did not contact his cruiser. (Doc. 60-5 at 3.) Officers Bull and Zink left their cruisers to check on Bourn's condition. At 21:20:11, less than two minutes after the beginning of the chase, Officer Faden requested an ambulance.

In their affidavits, Officers Bull and Zink state that "[a]t no point was there any discussion of erecting a roadblock nor was it my intent to use my cruiser in that manner." Id. at 4; (Doc. 60-6 at 4.)

Vermont State Trooper Todd Wilkins arrived at the scene shortly after the crash occurred. Trooper Wilkins, who was trained in accident investigation, inspected the area and concluded that there was more than enough room for Bourn to have driven around the southbound cruisers, and that the cause of the

4

crash was Bourn's high rate of speed and negligent operation of the motorcycle. Trooper Wilkins also concluded that had Bourn been traveling at the posted speed limit, he would have had ample time in which to stop his motorcycle prior to reaching the police cruisers.

Defendants have also submitted the affidavit of Thomas Martin, an expert in crime forensics. Mr. Martin reconstructed the crash scene and concluded that, had Bourn been traveling at a reasonable speed, he would have had ample time to react to Officer Zink's turn and stop his motorcycle. Mr. Martin further concluded that there was enough space on the northbound or southbound lanes for Bourn to have safely evaded the cruisers had he chosen to do so.

Bourn subsequently pled guilty to petit larceny for stealing the gasoline, attempting to elude a police officer, and negligent operation of a motor vehicle. He now alleges he suffered head trauma and abrasions as a result of the crash. He also claims to be suffering from after-effects of those injuries, including "flashbacks, nightmares, headaches, and irrational actions." (Doc. 39 at 3.)

## Discussion

I. Summary Judgment Standard

The Defendants have moved for summary judgment on Bourn's claims against Officers Bull and Zink. The third Defendant in

the case, the Town of Bennington, was dismissed in a prior Opinion and Order. (Doc. 50.)

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); El Sayed, 627 F.3d at 933. Only disputes over material facts – facts that might affect the outcome of the suit under the governing law - will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).

Bourn's failure to oppose or respond to the summary judgment motion, standing alone, does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Indeed, if the moving party

6

fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).

Furthermore, it is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims. See Weixel v. Bd. of Ed. of City of New York, 287 F.3d 138, 146 (2d Cir. 2002).

II.  Fourth Amendment Analysis

The Court has construed Bourn's pleadings as bringing a constitutional claim of excessive force.[1]  Such a claim may be brought under either the Fourth Amendment, or the substantive due process requirements of the Fourteenth Amendment.  The Court will first address the potential Fourth Amendment claim.

In any claim predicated on the Fourth Amendment, the first step is to determine whether there has been a constitutionally cognizable search or seizure.  See Medeiros v. O'Connell, 150

---

[1] The Court noted in a prior Opinion and Order that "Bourn's Complaint does not assert a federal cause of action." (Doc. 34 at 5.)  However, "construing Bourn's *pro se* submissions to raise the strongest argument that they suggest," the Court construed the Complaint "as alleging excessive force in violation of [Bourn's] constitutional rights."  Id.  Bourn has not objected to that characterization of his claim in any of his subsequent filings with the Court.

7

F.3d 164, 167 (2d Cir. 1998). "Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure." Pinto-Montoya v. Mukasey, 540 F.3d 126, 132 (2d Cir. 2008). However, the Supreme Court has made clear that

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement . . ., but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original). The Brower decision illustrated this point by noting that there would be no Fourth Amendment seizure where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," but then accidentally stopped the suspect by crashing into him. Id. at 597. "If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." Id.

In County of Sacramento v. Lewis, 523 U.S. 833 (1998), police officers undertook a high speed chase of a motorcycle that resulted in the accidental death of the motorcycle passenger. Id. at 837.

8

> The chase ended after the motorcycle tipped over as [the operator] tried a sharp left turn. By the time [the police officer] slammed on his brakes, [the operator] was out of the way, but [the motorcycle's] passenger was not. The patrol car skidded into him at 40 miles an hour propelling him some 70 feet down the road and inflicting massive injuries.

Id. The Lewis Court determined the officer's actions did not constitute a seizure for purposes of the Fourth Amendment because the pursuit was not terminated "'*through means intentionally applied*.'" Id. at 843-44 (quoting Brower, 489 U.S. at 597 (emphasis in original)).

In this case, it is undisputed that Officer Zink did not intend to block Bourn's movement, or to terminate the chase by means of forming a blockade. Officer Bull's sworn affidavit confirms there was no intent by either officer to form a blockade with their vehicles. Radio transmissions submitted by Defendants confirm there were no communications between the officers concerning a roadblock. (Doc. 60-8.)

Officer Zink erroneously believed he could turn his vehicle into a parking area and then assist Officer Faden in pursuit. He also failed to perceive that Bourn was traveling at approximately 100 miles per hour. Officer Zink did not expect to be stopped by a curb, and did not have time to move his vehicle before Bourn applied his brakes and went into a skid. Because Defendants did not intentionally terminate the chase, they did not impede Bourn's "freedom of movement *through means intentionally*

9

*applied*," and there was thus no seizure under the Fourth Amendment. Brower, 489 U.S. at 597 (emphasis in original).

III. Fourteenth Amendment Analysis

Given that there was no seizure under the Fourth Amendment, the Court must analyze Bourn's claim under the substantive due process requirements of the Fourteenth Amendment. See Lewis, 523 U.S. at 843, 846 (analyzing appeal under substantive due process when respondents' claim was not "covered by" the Fourth Amendment); Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir. 1998). The Supreme Court has held that substantive due process protects individuals from arbitrary government action, and that only the most egregious official conduct can be said to violate the Constitution. See Lewis, 523 U.S. at 846. "To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." Id.

The Lewis decision directly addressed substantive due process in the context of police pursuits. The Court held that "in a high-speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." 523 U.S. at 836. In doing so, the Court

10

rejected the argument that substantive due process may be violated by deliberate or reckless indifference to life. Id.[2]

The Lewis Court further explained that although "prudence" might have called for less risky behavior by law enforcement, the officer in question

> was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. [The driver's] outrageous behavior was practically instantaneous, and so was [the officer's] instinctive response.
>
> . . .
>
> Regardless whether [the officer's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983.

Id. at 855.

Here, it is undisputed that Defendants did not have a "purpose to cause harm unrelated to the legitimate object of arrest." Id. at 836. In fact, there was no intent to cause any sort of harm. Officer Zink attempted a u-turn in a parking area but was obstructed by an unanticipated curb. Even when viewing

---

[2] As in Lewis, the Amended Complaint in this case alleges "a variety of culpable states of mind," id. at 854, including willful, negligent, malicious, intentional, and reckless conduct. (Doc. 4 at 3-5.)

11

the facts in a light most favorable to Bourn, the undisputed record demonstrates that the maneuver resulted in injury largely because of Bourn's approach at over three times the posted limit. Id. at 855. While "prudence" might have counseled against Officer Zink's left turn, it was Bourn who "flout[ed] . . . the commonly understood law enforcement authority to control traffic" and chose to "race through traffic at breakneck speed." Id. Accordingly, the Court finds as a matter of law that Officer Zink's conduct did not "shock the conscience," and that Defendants are therefore entitled to summary judgment on any Fourteenth Amendment substantive due process claim.

IV. Qualified Immunity

Defendants' final argument is that they are entitled to qualified immunity. "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In deciding qualified immunity, courts ask whether the facts shown (1) "make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal quotation marks omitted).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In this way, qualified immunity shields official conduct that is "'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (alterations omitted) (quoting Anderson, 483 U.S. at 639); see also Taravella v. Town of Wolcott, 599 F.3d 129, 134-35 (2d Cir. 2010).

Here, the Court has determined that Defendants did not violate Bourn's constitutional rights. Even assuming, however, that genuine issues of material fact existed on the constitutional questions, Defendants would be entitled to qualified immunity. In determining whether a right is clearly established, this Court looks to Supreme Court and Second Circuit precedent. See Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004). A right is "'clearly established'" when "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

With respect to the Fourth Amendment analysis, the case law set forth above does not clearly establish that Defendants' conduct violated Bourn's constitutional rights. Indeed, the law

13

holds that termination of a chase by unintended means does not constitute a seizure.  Accordingly, Officer Zink would have had no basis to reasonably understand that his mistake about the placement of a curb on Park Street could result in a deprivation of Bourn's Fourth Amendment rights.

Similarly, the <u>Lewis</u> decision makes clear that an officer's conduct violates substantive due process protections only when he or she demonstrates "a purpose to cause harm unrelated to the legitimate object of arrest."  523 U.S. at 836.  In this case, the undisputed affidavits submitted by Defendants attest that there was no intent to cause any sort of harm, whether related or unrelated to the object of arrest.  Accordingly, and assuming the Court could find genuine issues of material facts with respect to a constitutional violation, Defendants would be entitled to qualified immunity on Bourn's claims.

Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (Doc. 60) is GRANTED, and this case is DISMISSED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 27th day of March, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge